127 F.3d 1179
 21 Employee Benefits Cas. 2049, 97 Cal. Daily
Op. Serv. 8389,
97 Daily Journal D.A.R. 13,529
STANDARD INSURANCE COMPANY, an Oregon corporation,
Plaintiff-counter-defendant-Appellee,
v.
Jerome W. SAKLAD, an individual, Defendant-counter-claimant-Appellant.
 No. 96-55853.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 9, 1997.
Decided Oct. 31, 1997.
 
 Paul S. Sigelman, Robert A. Aronson, Paul Sigelman Law Firm, Beverly Hills, California, for defendant-counter-claimant-appellant.
 Lawrence J. Hilton, Michael G. Yoder, O'Melveny & Myers, Newport Beach, California, for plaintiff-counter-defendant-appellee.
 Appeal from the United States District Court for the Central District of California; James M. Ideman, District Judge, Presiding. D.C. No. CV-93-05472-JMI.
 Before: O'SCANNLAIN, FERNANDEZ, and THOMAS Circuit Judges.
 FERNANDEZ, Circuit Judge:
 
 
 1
 Jerome Saklad appeals the district court's grant of summary judgment in favor of Standard Insurance Company on its claim that it could employ setoff against benefits owed to Saklad from the Master Plating, Inc. (MP) disability plan, and thus avoid distributing those benefits to him. We reverse and remand.
 
 BACKGROUND
 
 2
 The facts before the district court do not place Saklad in a very flattering light. He had been employed by Industrial Electronic Engineers (IEE), and in late 1979 he filed a claim under its disability plan in which he represented that he was totally disabled due to Legionnaire's Disease and accompanying heart problems. Standard provided the insurance to IEE's disability plan, which was a welfare plan under the Employee Retirement Income Security Act. See 29 U.S.C. § 1002(1). By December of 1984, Standard had settled Saklad's past and future disability claims for which Saklad received a total of $197,234.
 
 
 3
 In the meantime, Saklad was actually employed by another company, MP. In fact, he held a high-level job with that company. He was its vice president, and he had worked for the company since January of 1980. It, too, had an ERISA disability plan, and Standard insured that plan also. In 1986, Saklad, in an excess of forgetfulness or greed, filed a disability claim under the MP plan. This time, he says, he really was disabled. Standard does not dispute that.
 
 
 4
 Standard was understandably miffed when it received Saklad's new claim. It sued him in the United States District Court for the fraud he perpetrated in order to receive benefits from the IEE plan and obtained a judgment against him. It then decided that it could not collect the judgment unless it could, somehow, reach the benefits to which Saklad was entitled from the MP plan. It set out to do just that.
 
 
 5
 Standard first tried to garnish the benefits, but was unsuccessful because both under Oregon law, where Standard made its attempt at garnishment, and under California law, where Saklad and the plan were located, benefits are exempt from garnishment. See, e.g., Cal.Code Civ. P. § 704.130; Or.Rev.Stat. § 23.160(1)(j)(C).
 
 
 6
 Frustrated at that point, Standard decided to go to the federal courts to seek a setoff of its IEE judgment against the obligations that the MP plan had to Saklad.[1] Thus, it brought this action. The district court agreed that Standard was entitled to setoff and granted its summary judgment motion. This appeal followed.
 
 JURISDICTION
 
 7
 Saklad first claims that the district court did not have subject matter jurisdiction. That, of course, is an issue that we review de novo. See Sahni v. American Diversified Partners, 83 F.3d 1054, 1057 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 765, 136 L.Ed.2d 712 (1997); United States ex rel. Fine v. Chevron, U.S.A., Inc., 72 F.3d 740, 742 (9th Cir.1995) (en banc), cert. denied, --- U.S. ----, 116 S.Ct. 1877, 135 L.Ed.2d 173 (1996).
 
 
 8
 Standard seeks to found jurisdiction on the provisions of 29 U.S.C. § 1132(a)(3)(B), which provide that a fiduciary, which all agree Standard is, can bring an action "to obtain other appropriate equitable relief (i) to redress [ERISA] violations or (ii) to enforce any provisions of this [ERISA] subchapter or the terms of the plan." Standard argues that setoff is equitable. Therefore, it claims that it can seek that equitable remedy. There is some logic to Standard's argument, but it founders on adamantine rocks of precedent. All Standard is really attempting to do is obtain a declaration that it need not adhere to its contractual obligations to the MP plan and Saklad, which would require the payment of benefits. Where mere clarification of a fiduciary's obligation to pay benefits is involved, § 1132(a)(3)(B) is not a source of jurisdiction, and the insurer's action "does not fall within the ambit" of that section. Transamerica Occidental Life Ins. Co. v. DiGregorio, 811 F.2d 1249, 1253 (9th Cir.1987). But there is no need for Standard to hammer uselessly at adamant; it can instead rely on a more fruitful path to jurisdiction over its declaratory relief action.
 
 
 9
 A person may seek declaratory relief in federal court if the one against whom he brings his action could have asserted his own rights there. See Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 19 & n. 19, 103 S.Ct. 2841, 2851 & n. 19, 77 L.Ed.2d 420 (1983). As we said in Janakes v. United States Postal Serv., 768 F.2d 1091, 1093 (9th Cir.1985), "[i]f ... the declaratory judgment defendant could have brought a coercive action in federal court to enforce its rights, then we have jurisdiction...." In other words, in a sense we can reposition the parties in a declaratory relief action by asking whether we would have jurisdiction had the declaratory relief defendant been a plaintiff seeking a federal remedy.
 
 
 10
 Here it is clear that if Standard had refused to pay the benefits required by the terms of the MP plan, Saklad could have brought an action to enforce payment. "A civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan...." 29 U.S.C. § 1132(a)(1)(B). That is exactly what Standard desires to do. It desires to refuse to pay because, it says, it has the right to setoff--a claim it would no doubt have made if Saklad had sued it. Thus, this is a classic case for declaratory relief. Rather than stand fast and await a lawsuit, a party has asked the court to decide the dispute before it commits an egregious breach of the other party's rights. The district court did have jurisdiction. See Transamerica, 811 F.2d at 1253.
 
 DISCUSSION
 
 11
 Standard does not fare as well on the setoff issue itself because setoff is not a proper remedy in this instance. In so deciding, we emphasize the fact that Standard seeks setoff of benefits improperly obtained from the IEE disability plan against benefits owed by the MP disability plan. While Standard itself may be a fiduciary of both plans and the insurer of the benefits under both, the fact remains that each plan is a separate entity, and Saklad's obligations to the IEE plan are not at all commensurate with the MP plan's obligations to him. In other words, this case is entirely different from those relied upon by Standard.
 
 
 12
 No doubt equitable remedies are available for the purpose of redressing ERISA violations. See Varity Corp. v. Howe, --- U.S. ----, ----, 116 S.Ct. 1065, 1079, 134 L.Ed.2d 130 (1996); Mertens v. Hewitt Assocs., 508 U.S. 248, 256-58, 113 S.Ct. 2063, 2068-69, 124 L.Ed.2d 161 (1993). That is not the point. Saklad did not violate ERISA when he made his MP claim. Nor is Standard helped by cases where setoff has been allowed between a plan and one of its own beneficiaries. See, e.g., Parker v. Bain, 68 F.3d 1131, 1140 (9th Cir.1995) ("We expressly approve the district court's decision to set off the money owed by the Plan against the money [the breaching fiduciary] owed to the Plan."); Coar v. Kazimir, 990 F.2d 1413, 1423 (3rd Cir.1993) ("[W]e believe that Congress did not intend to allow [a breaching trustee] to collect pension benefits prior to satisfying his liabilities to the fund."); Crawford v. La Boucherie Bernard Ltd., 815 F.2d 117, 122 (D.C.Cir.1987) (The equitable remedies authorized by ERISA against fiduciaries who wrongfully deplete plan assets to the detriment of beneficiaries can best be effectuated by applying the traditional trust remedy of an offset); Friedlander v. Doherty, 851 F.Supp. 515, 522 (N.D.N.Y.1994) (To disallow setoff would "allow a breaching fiduciary to collect from the very fund he fraudulently depleted."); see also Larsen v. NMU Pension Plan Trust, 767 F.Supp. 554, 558 (S.D.N.Y.1991) (Setoff is permitted to assure a beneficiary's rights while avoiding a windfall to that beneficiary).
 
 
 13
 Standard does not seek to protect the MP plan assets for its beneficiaries; it seeks to protect itself only. Because the IEE plan is entirely separate, it is as if Standard had a judgment for a wholly separate debt--for example, a deficiency upon foreclosure on a home or an automobile loan--and sought to set that off against the MP plan's obligations to Saklad. The mere fact that Saklad's separate debt was through another ERISA disability plan is of no legal consequence.
 
 
 14
 We, of course, understand that it may seem unfair to let Saklad get away with his fraud. But cosmic fairness is not necessarily the point. We must follow the law, and who is to say what is ultimately unfair. For example, one could as easily argue that no other creditor would be entitled to seize Saklad's benefits. See Cal.Code Civ. P. § 704.130. Were it not for the happenstance that Standard was a fiduciary for both plans, it could only watch as Saklad collected his MP benefits and kept his ill-gotten IEE gain. One could then add that the long-standing rule in California and most other jurisdictions is that where a creditor cannot levy on exempt property, he cannot obtain a setoff against that property either. See Kruger v. Wells Fargo Bank, 11 Cal.3d 352, 369, 521 P.2d 441, 451-52, 113 Cal.Rptr. 449, 459-60 (1974); Barnhill v. Robert Saunders & Co., 125 Cal.App.3d 1, 5-6, 177 Cal.Rptr. 803, 805-06 (1981); 20 Am.Jur.2d Counterclaim, Recoupment, Etc. § 34 (1995); E.G. Knight, Annotation, Availability of debtor's exemption to defeat counterclaim or set-off; 106 A.L.R. 1070 (1937). Standard seeks to avoid all of that law by invoking ERISA equity. We see no apodictic unfairness in turning back Standard's setoff attempt.
 
 CONCLUSION
 
 15
 An ERISA fiduciary cannot refuse to pay a beneficiary of a plan by using a setoff from a wholly separate source of debt, be that an ordinary debt or a debt to a wholly separate ERISA plan. Therefore, Standard cannot set off the money that Saklad owes on account of his fraud upon the IEE plan against the money which the MP plan owes to him. We will not now consider the question of whether coordination of benefits between the two plans will allow a reduction of the MP plan payments in whole or in part. We leave that to further proceedings in the district court.[2]
 
 
 16
 REVERSED and REMANDED for further proceedings.
 
 
 
 [1]
 Standard also asks for a coordination of benefits, but that issue was not decided by the district court and is not properly before us
 
 
 [2]
 Any question of attorney fees must await the final decision of the district court. Thus, we will not award them to Saklad at this time