**CORRECTED OPINION**                    [PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 7, 2003
THOMAS K. KAHN
CLERK

No. 02-11990

D. C. Docket No. 01-01405-CV-A-N

HOUSEHOLD BANK, f.s.b.,

Plaintiff-Appellant,

H & R BLOCK, INC.
H & R BLOCK EASTERN TAX SERVICES, INC.,
H & R BLOCK TAX SERVICES, INC.,
BLOCK FINANCIAL CORPORATION,

Intervenors-Plaintiffs-
Appellants,

versus

THE JFS GROUP, Mary G. Blackmon,
Carl T. Brown, William E. Burch,
Vincent R. Butler, Margaret A. Callaway,
Dorothy Carruthers, Angela G. Christian,
Curtis Crews, Letitia A. Crews
Janice Cunningham, Susie Davis,
Willie Davis, Billy Devose,
Patricia Dixon, Grace Downie,
Sandra E. Dumas, Jessie Erkins,
Larry Forte, Vivian A. Fortson,
Michael A. Fountain, Tangela D. Glenn,
Jean Imgram Gordy, Jeanette Harris,
Otis G. Hayward, Eyvonne Hill,

Jeffery Jackson, Willie J. Jett,
Charlene D. Jonson, Gloria A. Johnson,
Tonya A. Jones, Michael D. Kelly,
Dorothy Kinsey, Latanya S. McCoy,
Donald McCray, Johnnie R. McCray,
Tonia McGhee, Lisa McQueen,
Mary A. Morris, Denise Paige,
Yvonne Paige, Aaron C. Patterson,
Modester Peterson, Belinda Ann Rogers,
Brenda Ruffin, Onnie Simmons,
Emogene L. Smith, Cresha D. Thomas,
Evelyn P. Thomas, Theresa L. Turner,
Eugene Williams, and Winnifer Williams,
THE MIDDLE DISTRICT GROUP, Marie Anderson,
Alvester Brafort, Patricia A. Coleman,
Caldonia Jackson, Shirley Jernigan,
Mamie D. Mitchell, Diane Peterson,
Ernestine D. Starks, Gerald Stokes,
Albert Thomas, and Earlene Young,
THE JTMH GROUP,
THE ADAMS GROUP,
THE ABRAHAM GROUP, et al.,

                                        Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Middle District of Alabama

———————————————
**(February 7, 2003)**

Before CARNES, HULL and ALARCÓN[*], Circuit Judges.

ALARCÓN, Circuit Judge:

———————————————

[*] Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

2

We must decide whether the district court erred in dismissing this declaratory judgment action for lack of subject-matter jurisdiction, notwithstanding the existence of an actual controversy between the parties regarding non-frivolous federal claims that could be brought by the defendants in a coercive action. The district court held that it lacked subject-matter jurisdiction because the plaintiffs failed to demonstrate that the anticipated coercive action could, but would not necessarily present a federal question due to the availability of state-law claims. In reversing this judgment, we join seven of our sister circuits in concluding that federal-question jurisdiction exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant could file a coercive action arising under federal law.

## I

H & R Block, Inc. ("Block") provides tax preparation services to its customers. For a fee, it will file a customer's tax return electronically with the Internal Revenue Service ("IRS"). Electronically filed tax returns enable a taxpayer to obtain a refund within two weeks. For Block's customers who preferred not to wait that long, Block arranged for Household Bank, f.s.b. or its predecessor-in-interest, Beneficial Financial Bank (collectively "Household") to

3

make a short-term loan in the amount of the anticipated tax refund. These loans are referred to as tax refund anticipation loans ("RAL"). The loan is secured by the amount of the tax refund. Block's customers authorized the IRS to deposit the tax refund in Household's account. Each of Block's customers signed a contract in which he or she agreed that any dispute relating to the RAL would be resolved by binding arbitration.

In 1998, two national class actions were filed against Household in the United States District Court for the Northern District of Illinois (the "Illinois Class Actions") by Block customers who had received RALs. Zawikowski v. Beneficial Nat'l Bank, No. 98-C-2178 (N.D. Ill.); Turner v. Beneficial Nat'l Bank, No. 98-C-2550 (N.D. Ill.). These actions were certified as Fed. R. Civ. P. 23(b)(3) "opt-out" class actions. The claims in the Illinois Class Actions alleged violations of the federal Truth in Lending Act ("TILA"), the National Bank Act, Racketeer Influenced and Corrupt Organizations Act ("RICO"), and various state-law claims. A settlement was reached in the Illinois Class Actions. Six hundred and seventy-two class members from Alabama, however, exercised their right to opt out of the Illinois Class Actions in order to file their own actions against Household.

On August 2, 2000, counsel for some of the Alabama RAL recipients who opted out of the Illinois Class Actions executed an affidavit which alleged that "if

4

adequate and fair settlements are not able to be obtained, I intend to pursue litigation through the Courts here in Alabama which are favorable to plaintiffs with valid causes of action such as these." (Emphasis added).

On September 7, 2000, Household filed this action for a declaratory judgment pursuant to 28 U.S.C. § 2201(a) and 9 U.S.C. § 4 of the Federal Arbitration Act against five groups of potential plaintiffs from Alabama who had opted out of Illinois Class Actions (collectively the "Alabama Defendants").[1] Household prayed for a declaration that the arbitration provisions in the RAL agreements are enforceable. Household alleged that the district court had diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), and federal-question jurisdiction pursuant to 28 U.S.C. § 1331 "because certain of the potential claims by the defendants against Household arise under federal law, including the federal Truth in Lending Act. . . ." On the same date, Block filed a claim styled as a "Complaint of Intervention." Block alleged that the district court had federal-question jurisdiction under the Truth in Lending Act, 15 U.S.C. § 1601, et seq. and the National Bank Act, 12 U.S.C. §§ 85 and 86. The Alabama Defendants filed motions to dismiss for lack of subject-matter jurisdiction. The district court

_____

[1]These groups are: the JFS Group, the Middle District Group, the JTMH Group, the Adams Group, and the Abraham Group.

5

granted the motions on March 8, 2002 holding that it did not have subject-matter jurisdiction pursuant to § 1331.[2]

## II

Household and Block contend they are entitled to a declaration that the arbitration clause is enforceable because it is uncontested that, prior to the date this action was filed, the Alabama Defendants could have filed a non-frivolous coercive action in federal court under TILA, the National Bank Act, or RICO. This court reviews de novo the dismissal of an action for lack of subject-matter jurisdiction.  Woodruff v. United States Dept. of Labor, 954 F.2d 634, 636 (11th Cir. 1992).[3]

---

[2]The district court also concluded that it did not have diversity jurisdiction because Household and Block had failed to demonstrate that the amount in controversy exceeded $75,000.  Household and Block have not appealed from this ruling.

[3]Citing Wilton v. Seven Falls Co., 515 U.S. 277 (1995), counsel for the JFS Group, the Middle District Group, and the Brewer Group argue in their responsive brief that we must apply the abuse of discretion standard of review on appeal.  We disagree.

In Wilton, the Supreme Court held that a district court has the discretion to stay a declaratory judgment during the pendency of parallel state court proceedings.  Id. at 290.  The Court held that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  Id. at 282.  The district court concluded it lacked subject-matter jurisdiction, and, thus, it did not purport to exercise its discretion to grant a stay.

The Federal Arbitration Act, 9 U.S.C. § 1 et seq., does not provide an independent basis for a federal court's subject-matter jurisdiction. Pursuant to 9 U.S.C. § 4, however,

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (2002). Accordingly, we must determine whether the complaints filed by Household and Block set forth facts showing that there is an independent basis for federal court jurisdiction. See Tamiami Partners v. Miccosukee Tribe of Indians, 177 F.3d 1212, 1222-23 (11th Cir. 1999) ("[T]he Federal Arbitration Act alone is insufficient to confer federal jurisdiction over disputes involving arbitration agreements, . . . an independent basis of jurisdiction–such as diversity or a federal question–is required."). The Declaratory Judgment Act, 28 U.S.C. § 2201(a), also requires that the plaintiff allege facts showing that the controversy is within the court's original jurisdiction. Section 2201(a) provides in pertinent part:

> In a case of actual controversy within its jurisdiction, . . .

7

any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

"[T]he operation of the Declaratory Judgment Act is procedural only." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937).  If there is an underlying ground for federal court jurisdiction, the Declaratory Judgment Act "allow[s] parties to precipitate suits that otherwise might need to wait for the declaratory relief defendant to bring a coercive action."  Gulf States Paper Corp. v. Ingram, 811 F.2d 1464, 1467 (11th Cir. 1987).

In Article III, § 2 of the Constitution, the founders provided that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States and Treaties made or which shall be made under this Authority . . . ."  Id.  In 1875, Congress authorized federal trial courts to exercise original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States, Act of March 3, 1875, 18 Stat. 470 (codified as amended at 28 U.S.C. § 1331).

Household alleged in its complaint that the district court had subject-matter jurisdiction "under federal law, including the federal Truth in Lending Act."

8

Block also alleged that the district court had federal-question jurisdiction "because the potential claims by Defendants against Household and/or Block arise under federal law, including the Federal Truth in Lending Act." Additionally, it is undisputed between the parties that there is an actual controversy between them arising under federal law. The Alabama Defendants contend that there are also state law controversies. Citing the Fifth Circuit's unpublished decision in Battiste v. H & R Block, Inc., 209 F.3d 719 (5th Cir. 2000) (table), Block has alleged, though, that "the potential [RAL] claims of the Defendants are completely preempted by the National Bank Act, 12 U.S.C. §§ 85 and 86."

The dismissal of a federal-question claim for lack of subject-matter jurisdiction is "justified only if that claim were 'so attenuated and unsubstantial as to be absolutely devoid of merit,' or 'frivolous.'" Baker v. Carr, 369 U.S. 186, 199 (1962) (internal citations omitted). The district court did not conclude that the claims by Household and Block were "absolutely devoid of merit, or frivolous." Instead, it dismissed this action because of its determination that

> [t]he position of the Plaintiffs would eviscerate the long-standing principle that the plaintiff is the master of his claim: if a declaratory judgment plaintiff may seek relief in federal court based on the fact that the declaratory judgment defendant may assert a federal claim, even though he may also limit his coercive action to only state claims, that is tantamount to allowing a declaratory

9

> judgment plaintiff to force the other party to litigate a claim that he may have no intention of pursuing.

Household Bank v. JFS Group, 191 F. Supp. 2d 1292, 1303 (M.D. Ala. 2002). The district court ruled that "while the DJA does allow a plaintiff to precipitate a suit based on federal law, he may only do so where the anticipated coercive action would <u>of necessity</u> arise under federal law." <u>Id.</u> In support of this theory, the district court relied upon the following statement in <u>Franchise Tax Board v. Construction Laborers Vacation Trust</u>, 463 U.S. 1 (1983): "'Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question.'" <u>Household</u>, 191 F. Supp. 2d at 1301 (quoting <u>Franchise Tax Bd.</u>, 463 U.S. at 19).

The district court characterized the quoted language from <u>Franchise Tax Board</u> as a "rather unassuming passage." <u>Id.</u> It did not refer to it as a holding, or even obiter dictum. Nevertheless, the district court concluded that "this court understands the <u>Franchise Tax Board</u> passage to stand for the more limited proposition that where a declaratory judgment defendant's anticipated coercive action would <u>have</u> to be federal in nature, the court would have federal court jurisdiction." <u>Id.</u> at 1301-02. We disagree. The "rather unassuming passage" in

10

Franchise Tax Board was a mere observation of the historical fact that federal district courts have taken original jurisdiction when a declaratory judgment defendant's potential coercive action necessarily presents a claim arising under federal law. The Court did not hold in Franchise Tax Board that a district court lacks original jurisdiction over an action filed under the federal Declaratory Judgment Act where the plaintiff's well-pleaded complaint alleges that the defendant could assert non-frivolous state and federal law claims in a coercive action.

The jurisdictional issue addressed by the Court in Franchise Tax Board is clearly distinguishable from the question presented in this appeal. In Franchise Tax Board, the Appellant state agency filed a complaint in a California court against the Construction Laborers Vacation Trust for Southern California ("CLVT"). It alleged in its first cause of action that CLVT had violated a California statute that requires any person who possesses property belonging to a taxpayer to withhold the amount of any tax, interest, or penalty due from the taxpayer and to transmit the amount withheld to the Franchise Tax Board. Franchise Tax Bd., 463 U.S. at 5. In its second cause of action, the Franchise Tax Board requested that the state court grant declaratory relief under California's Declaratory Judgment Act, Cal. Code Civ. Proc. § 1060 (West 1980) and hold that

CLVT was not entitled to pre-emption under § 514 of the Employee Retirement Income Security Act of 1974 ("ERISA") 88 Stat. 829 as amended, 29 U.S.C.A. § 1001 et sec. (1976 ed. and Supp. V). Id. at 6-7.

CLVT removed the action in Franchise Tax Board to the United States District Court for the Central District of California. That court denied Franchise Tax Board's motion for a remand to the state court. It ruled that ERISA did not pre-empt the State's power to levy on funds held in trust by CLVT. Id. at 7. The Ninth Circuit Court of Appeals reversed the judgment. It held that ERISA pre-empted California's attempt to levy on the vacation trust fund for unpaid taxes. Franchise Tax Bd. v. Const. Laborers Vac. Trust, 679 F.2d 1307, 1308-09 (9th Cir. 1982).

The Supreme Court held that the federal courts had no jurisdiction to decide the questions presented by the Franchise Tax Board in its complaint. The Court vacated the judgment of the court of appeals and directed it to remand the matter to the state trial court from which it was removed. Franchise Tax Bd., 463 U.S. at 28.

The Court ruled that the district court did not have removal jurisdiction over the Franchise Tax Board's first cause of action to enforce its levy under state law because it did not present a substantial question of federal law under the well-

12

pleaded complaint rule.  Id. at 13.  Regarding the Franchise Tax Board's second cause of action for declaratory relief under California law, the Court declared that under § 502(a) of ERISA 29 U.S.C. § 1132(a), only certain persons—participants, beneficiaries, fiduciaries, or the Secretary of Labor—may file an action in federal court.  Id. at 21-25.  The Court reasoned as follows:

> [Section 502(a)] did not go so far as to provide that any suit against such parties must also be brought in federal court when they themselves did not choose to sue.  The situation presented by a State's suit for a declaration of the validity of state law is sufficiently removed from the spirit of necessity and careful limitation of district court jurisdiction that informed our statutory interpretation in Skelly Oil and Gully to convince us that, until Congress informs us otherwise, such a suit is not within the original jurisdiction of the United States district courts.

Id. at 21-22.

In this matter, Household and Block alleged that the Alabama Defendants could file a coercive action asserting federal claims under the Truth in Lending Act, the National Bank Act and RICO.  Unlike the limited jurisdictional provisions of ERISA, the statutes that could support a federal claim in a coercive action filed by the Alabama Defendants do not expressly limit the persons who may invoke the original jurisdiction of the federal courts.

In Franchise Tax Board, the Court noted that the only question in dispute

13

between the parties was whether "section 514 of ERISA preempts state law and that the trustees lack the power to honor the levies made upon them by the State of California." Id. at 6. The Supreme Court held that

> a suit by state tax authorities both to enforce its levies
> against funds held in trust pursuant to an ERISA-covered
> employee benefit plan, and to declare the validity of the
> levies notwithstanding ERISA, is neither a creature of
> ERISA itself nor a suit of which the federal courts will
> take jurisdiction because it turns on a question of federal
> law.

Id. at 28. The Court concluded that it lacked jurisdiction over the federal pre-emption issue because it is only a defense to the Franchise Tax Board's right to enforce its levy under California law. Id. at 17-19. In reaching this decision, the Court applied the rule it announced in Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950).

In Skelly Oil, the Court concluded that the district court did not have original jurisdiction over the claim for declaratory relief filed by Phillips Petroleum Company because "[w]hatever federal claim Phillips may be able to urge would in any event be injected into the case only in anticipation of a defense to be asserted by [defendants]." Id. at 672. The Court instructed that

> [s]ince the matter in controversy as to which Phillips
> asked for declaratory judgment is not one that "arises
> under the . . . laws . . . of the United States" and since as

14

> to Skelly and Stanolind jurisdiction cannot be sustained on the score of diversity of citizenship, the proceedings against them should have been dismissed.

Id. at 674. The Supreme Court's reliance on Skelly Oil in Franchise Tax Board belies the district court's determination that an action under the Declaratory Judgment Act may be filed "only . . . where the anticipated coercive action would of necessity arise under federal law." Household, 191 F. Supp. 2d at 1303. We note also that in Skelly Oil, the Court affirmed the order denying the motion to dismiss the action on jurisdictional grounds against Magnolia Petroleum Company. The Court held that the district court had original jurisdiction over Phillips' state-law claims against Magnolia Petroleum Company based on diversity jurisdiction. Skelly Oil, 339 U S. at 675-78.

In the matter sub judice, the federal claims that could be filed in a coercive action by the Alabama Defendants have not been injected into the complaint by Household and Block as a potential defense to their state-law causes of action. Therefore, under Franchise Tax Board and Skelly Oil, the district court had subject-matter jurisdiction over Household and Block's request for a declaration that the arbitration provisions of its RAL agreements were enforceable because they alleged in a well-pleaded complaint that the declaratory judgment defendants could file non-frivolous federal claims against them.

15

III

The question whether a district court lacks subject-matter jurisdiction over a declaratory judgment action unless the defendant's anticipated coercive action would of necessity arise under federal law has not been squarely addressed by this court. In Gulf States Paper Corp. v. Ingram, 811 F.2d 1464 (11th Cir. 1987), however, this court affirmed the district court's conclusion that it had subject-matter jurisdiction over a declaratory judgment action brought by the plaintiff to determine its obligations under the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. §§ 2021 et seq. (1979). Id. at 1466. In Gulf States all of the defendant's possible claims were federal, whereas here it is undisputed that the Alabama Defendants could file a coercive action asserting state or federal claims. Nevertheless, this court's reasoning in Gulf States supports our conclusion that federal subject-matter jurisdiction exists in a declaratory judgment action in which a defendant could have brought a federal or state claim in a coercive action.

In Gulf States, this court reasoned as follows:

> To decide whether the well-pleaded complaint for declaratory relief in the present case properly asserts a substantial federal claim, we must determine whether, absent the availability of declaratory relief, the instant case could nonetheless have been brought in federal

16

> court. To do this, we must analyze the assumed coercive action by the declaratory judgment defendant.
>
> The coercive action in this case would be a suit by Ingram under the Veterans' Reemployment Rights Act seeking reinstatement in her job at Gulf States when she returned from her training program. Ingram's coercive action clearly would present a federal cause of action. Her suit would satisfy both Holmes' and Cardozo's arising under tests. Therefore, Gulf States' suit here that merely anticipates Ingram's federal claim against it falls within section 1331 jurisdiction via the bootstrapping mechanism of the declaratory judgment suit.

Id. at 1467 (emphasis added). This court also stated in Gulf States that the Declaratory Judgment Act permits a party, "'to bootstrap its way into federal court' by bringing a federal suit that corresponds to one the opposing party might have brought." Id. at 1467 (emphasis added) (quoting Superior Oil Co. v. Pioneer Corp., 706 F.2d 603, 607 (5th Cir. 1983)).

In Gulf States, this court did not discuss the Supreme Court's earlier decision in Franchise Tax Board in holding that subject-matter jurisdiction is present in a declaratory judgment action if "the instant case could nonetheless have been brought in federal court." Gulf States, 811 F.2d at 1467 (emphasis added). In this matter, the district court stated that this court's holding in Gulf States is "consistent with the narrower reading suggested by the use of the word of 'necessarily' in Franchise Tax Board." Household, 191 F. Supp. 2d at 1302. The

17

district court pointed out that this court stated in Gulf States that the declaratory judgment plaintiff's coercive action "clearly would present a federal cause of action." Id. (citing Gulf States, 811 F.2d at 1467).

We disagree with the district court's interpretation of this court's holding in Gulf States. This court expressly held in Gulf States that in deciding whether a district court has subject-matter jurisdiction over a well-pleaded complaint for declaratory relief, it must determine whether "absent the availability of declaratory relief, the instant case could nonetheless have been brought in federal court." Gulf States, 811 F.2d at 1467. In applying this rule, this court "analyze[d] the assumed coercive action by the declaratory judgment defendant." Id. Since, the plaintiff in Gulf States sought a declaration that it was not liable under the Vietnam Era Veterans' Readjustment Assistance Act, the well-pleaded complaint clearly raised a federal question.

Here, the district court erred in failing to apply the test set forth in Gulf States to determine whether a district court has subject-matter jurisdiction over a declaratory judgment action. It is undisputed that the Alabama Defendants could have filed a coercive action against the Appellants under several federal statutes. Therefore, Appellees' coercive action "clearly would present a federal cause of action." Gulf States, 811 F.2d at 1467. The Supreme Court commented in

18

Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto. Aerospace & Agricultural Implement Workers of America, 523 U.S. 653 (1998), that it had observed in Franchise Tax Board that "'[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question.'" Id. at 660 n.4. (quoting Franchise Tax Bd., 463 U.S. at 19). The Court also stated in Textron Lycoming that "[t]he cases brought forward to support that observation, however, were suits by alleged patent infringers to declare a patent invalid, which of course themselves raise a federal question." Id. (citing Franchise Tax Bd., 463 U.S. at 19 n.19 (emphasis added). Thus, the Court's reference to cases arising under patent law illustrates an obvious example of an action which involves a federal claim within the exclusive jurisdiction of the district court. The test adopted by this court in Gulf States is consistent with the Supreme Court's interpretation in Textron Lycoming of its observation in Franchise Tax Board regarding a district court's subject-matter jurisdiction over a declaratory judgment action that necessarily raises a federal law question in a well-pleaded complaint.

The Court's observation in Franchise Tax Board and Textron Lycoming is reflected in the following syllogism:

19

A district court has subject matter jurisdiction over a declaratory judgment action if the plaintiff's well-pleaded complaint alleges that the defendant could institute a coercive action arising under federal law.

The owner of a patent can assert a coercive action within the exclusive jurisdiction of the district court against an alleged patent infringer.

Therefore, the district court "necessarily" has subject matter jurisdiction over a declaratory judgment action filed by an alleged infringer who challenges the validity of a patent.

This conclusion is obvious because disputes over the infringement or the validity of a patent can only be resolved in a federal district court because jurisdiction "shall be exclusive of the courts of the states in patent . . . cases." 28 U.S.C. § 1338(a).

In enacting the Declaratory Judgment Act, Congress did not limit a district court's jurisdiction to federal questions within its exclusive jurisdiction. We lack the power to ignore the words used by Congress in creating the remedy set forth in 28 U.S.C. § 2201 where its intention is set forth in plain and unambiguous language. Concerns that permitting a party to seek a declaration under the DJA where the defendant <u>could</u> file a coercive action under state <u>or</u> federal law eviscerates the principle that plaintiff is the master of his or her claim, must be addressed to the legislative branch of our Government.

In holding that a district court does not have original jurisdiction to issue a declaration regarding an anticipated coercive action unless it is a claim that would, of necessity, arise under federal law, the district court expressly declined to apply decisions rejecting this theory from the Fourth, Fifth, Ninth, and Tenth Circuits. Each of these circuits has concluded that a federal court has subject-matter jurisdiction over a declaratory judgment action where the defendant could have brought a federal claim in a coercive action. See Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366, 370-71 (4th Cir. 2001) ("Because [the federal declaratory judgment plaintiff's] complaint . . . seeks declaratory relief on a matter for which [the declaratory judgment] could bring a coercive action . . . arising under federal law, we conclude the district court possessed subject-matter jurisdiction pursuant to § 1331.") (emphasis added); TTEA v. Ysleta Del Sur Pueblo, 181 F.3d 676, 682 (5th Cir. 1999) ("If [a federal statutue] gave the [defendant] a right to sue [the plaintiff], we would hold that TTEA could sue for declaratory judgment that the [defendant] stated no claim.") (emphasis added); Standard Ins. Co. v. Saklad, 127 F.3d 1179, 1181 (9th Cir. 1997) ("A person may seek declaratory relief in federal court if the one against whom he brings his action could have asserted his own rights there.") (emphasis added); Cardtoons, L.C. v. Major League Baseball Players, 95 F.3d 959, 965 (10th Cir. 1996) ("Because [the

defendant] <u>could</u> have brought a federal Lanham Act claim as part of a well-pleaded complaint against [the plaintiff] the district court had federal question jurisdiction over this declaratory judgment action.") (emphasis added).

Three other circuits have also concluded that subject-matter jurisdiction is present where the facts alleged in a declaratory judgment plaintiff's well-pleaded complaint demonstrate that the defendant could allege a coercive claim under federal law. In <u>Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.</u>, 925 F.2d 556 (2d Cir. 1991), the Second Circuit held that a district court had subject-matter jurisdiction over a declaratory judgment action in which the defendant threatened litigation under several causes of action, one of which was federal. <u>Id.</u> at 562. The court ruled that where a party "<u>might</u> assert" a federal claim, a declaratory judgment action could be "properly commenced in light of the real threat of litigation." <u>Id.</u> (emphasis added). Similarly, in <u>GNB Battery Techs., Inc. v. Gould, Inc.</u>, 65 F.3d 615 (7th Cir. 1995), the Seventh Circuit held that a district court has subject-matter jurisdiction over a declaratory judgment action where the plaintiff's well-pleaded complaint "presumes the <u>possibility</u> of an action by [the defendant] under [federal law]." <u>Id.</u> at 619 (emphasis added).

In <u>Fina Oil and Chemical Co. v. Ewen</u>, 123 F.3d 1466 (Fed. Cir. 1997), the Federal Circuit held as follows: "We determine whether there is jurisdiction in a

22

declaratory judgment action by applying the well-pleaded complaint rule.  We apply that rule not to the declaratory judgment complaint but the hypothetical action the declaratory defendant would have brought."  Id. at 1470 (internal citation omitted).  The Federal Circuit concluded that the declaratory judgment plaintiff satisfied the well-pleaded complaint rule by assuming that it held "a recognized interest in a patent that could be adversely affected by an action brought under [35 U.S.C.] section 256."  Id. at 1471 (emphasis added).

Under the law of this circuit, pursuant to the decision in Gulf States, a federal district court has subject-matter jurisdiction over a declaratory judgment action if, as here, a plaintiff's well-pleaded complaint alleges facts demonstrating the defendant could file a coercive action arising under federal law.  No federal appellate court has reached a contrary conclusion.

IV

In this matter, the Alabama Defendants informed the district court that they did not intend to file a federal claim against Household and Block.  We were advised during oral argument that some of the Alabama Defendants had filed non-federal claims in state court subsequent to the date that Household and Block filed their complaints in this matter.  In determining whether a district court has subject-matter jurisdiction, we must look to the facts as they existed at the time the action

23

was filed.  Keene Corp. v. United States, 508 U.S. 200, 207 (1993); Leonard v. Enter. Rent A Car, 279 F.3d 967, 972 (11th Cir. 2002).

In Kidder, Peabody, the declaratory judgment defendant also argued that subject-matter jurisdiction was lacking because, it had "committed never to assert [its federal claims] against [the plaintiff]."  925 F.2d at 562-63.  The Second Circuit held that the dispute was not mooted because without a binding, judicially-enforceable agreement, the defendant could file an action against the declaratory judgment plaintiff asserting claims arising under federal law.  Id. at 563.

The Alabama Defendants have not entered into a settlement agreement or filed a release of their federal claims in this matter, nor did they request the district court to enter judgment against them.  Regardless of their present renunciation, without a binding, judicially enforceable agreement, the Alabama Defendants could still put Household and Block to the task of defending against the non-frivolous federal law claims alleged in this declaratory judgment action.  We agree with the Second Circuit that "[a] judicial declaration that [the Defendants are] barred from asserting the [federal] claims would both settle the matter between these parties once and for all and dispel all uncertainty regarding the liability of [the Plaintiffs] for these claims."  Id.

CONCLUSION

24

The district court erred in concluding that it lacked subject-matter jurisdiction over this declaratory judgment action.  Accordingly, we VACATE the judgment dismissing this action.